# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOBBY LOBBY STORES, INC., MARDEL, INC., DAVID GREEN, BARBARA GREEN, STEVE GREEN, MART GREEN, AND DARSEE LETT, | |
| *Plaintiffs*, | |
| v. | |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, HILDA SOLIS, Secretary of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, TIMOTHY GEITHNER, Secretary of the United States Department of the Treasury, and UNITED STATES DEPARTMENT OF THE TREASURY, | No. CIV-12-1000-HE |
| *Defendants*. | |

## EMERGENCY APPLICATION FOR RULING ON PENDING PRELIMINARY INJUNCTION MOTION OR IN THE ALTERNATIVE FOR TEMPORARY RESTRAINING ORDER

Plaintiffs respectfully apply on an emergency basis to this Court for an immediate grant of the preliminary injunction motion now pending before this Court or, in the alternative, for a temporary restraining order preventing Defendants from enforcing the HHS Mandate against Plaintiffs. Plaintiffs respectfully request that an order be entered before the end of the day on Sunday, June 30, 2013, which is the last day before the Mandate begins to apply to Plaintiffs.[1]

## FACTUAL BACKGROUND

The Court is already familiar with the factual background of this appeal, and Plaintiffs will not restate it on this emergency application. *See* Dkt. No. 45 (order denying preliminary injunction); *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 (10th Cir. June 27, 2013), slip op. at 10-18 (describing factual background).

## PROCEDURAL HISTORY

Plaintiffs filed suit on September 12, 2012, challenging the contraceptive-coverage requirement under RFRA, the Free Exercise Clause, and the Administrative Procedure Act. Plaintiffs simultaneously moved for a preliminary injunction, which this Court denied on November 19, 2012. Dkt. No. 45. Plaintiffs appealed and moved for injunctive relief pending appeal, which a two-judge panel denied. *See Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, 2012 WL 6930302 (10th Cir. Dec. 20, 2012). Plaintiffs then

---

[1] The stay previously in force in this case dissolved upon issuance of the Court of Appeals' mandate in this case, which resolved the appeal. Dkt. No. 55. Plaintiffs have contacted Defendants by phone regarding their position on this Application. Defendants agree that the previous stay has expired with the court of appeals' ruling, but were unable to provide their position on the other relief requested in the Application at the time of filing.

1

sought emergency relief under the All Writs Act from the Supreme Court, which also denied relief. *See Hobby Lobby Stores, Inc. v. Sebelius*, 133 S. Ct. 641 (2012) (Sotomayor, J., in chambers).

Plaintiffs then moved for initial en banc consideration of their appeal, citing the exceptional importance of the questions presented. The Tenth Circuit granted that motion. Relying on "Hobby Lobby and Mardel's July 1 deadline for complying with the contraceptive-coverage requirement, [the Tenth Circuit] granted the plaintiffs' motion to expedite consideration of th[e] appeal." *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 (10th Cir. June 27, 2013), slip op. at 10-18.

Earlier today, the en banc Tenth Circuit decided the appeal, reversing and remanding to this Court for weighing and determination in the first instance of two preliminary injunction factors that the Court did not reach in its November 19, 2012 order denying the preliminary injunction. *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 (10th Cir. June 27, 2013), slip op. at 9; *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 (10th Cir. June 27, 2013) Judgment at 5 (setting forth instructions to this Court).

Plaintiffs now seek emergency resolution of those two factors and the issuance of the previously-requested preliminary injunction or in the alternative a temporary restraining order.

## SUMMARY OF ARGUMENT

The Court has very little to do to resolve the pending motion for preliminary injunction. When it denied the preliminary injunction in November, the Court did not reach the two preliminary injunction factors—the public interest and the balance of

harms—that the Tenth Circuit has now remanded to this Court for determination in the first instance. Since the motion has already been fully briefed and argued, the Court can simply reach the factors it did not reach in November.

Resolution of the two remaining factors is simple. First, the public interest would be served by issuing the preliminary injunction. The government has admitted as much by exempting health plans covering tens of millions of Americans, by voluntarily leaving the district court's preliminary injunction intact in *Tyndale House v. Sebelius*, and by either failing to oppose or failing to appeal preliminary injunctions in six other HHS mandate cases.

Second, as a four-judge plurality of the court of appeals held, there is no question that balance of equities tips strongly in favor of the Plaintiffs. Op. at 66. Hobby Lobby faces severe fines or the loss of its religious liberties, while the harms to the government— which already exempts tens of millions from its rule—are *de minimis* and unsupported by the record.

In the alternative, Plaintiffs apply for a temporary restraining order that would give them relief from the impending July 1 deadline.

## ARGUMENT

### I.  The Court should grant the pending preliminary injunction motion.

This afternoon, the Tenth Circuit reversed the denial of Plaintiffs' motion for preliminary injunction.  Op. at 9.  A majority of the en banc Court found both that Plaintiffs have established a likelihood of success on their RFRA claim, and that they would suffer irreparable harm absent a preliminary injunction.  Op. at 8.  The Court

remanded the case to this court "with instructions that the district court address the remaining two preliminary injunction factors and then assess whether to grant or deny the [P]laintiffs' motion." Op. at 9.

The two remaining factors are "balance of equities and public interest." Op. at 8. Both parties have already addressed those factors in briefing to this Court. See Dkt. 6, Plaintiffs' Motion for a Preliminary Injunction at 21-22; Dkt. 41, Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction at 39-40. Plaintiffs have offered sworn evidence in the form of a verified complaint which sets out: the harm to the plaintiffs in terms of both pressure to violate their beliefs and exposure to massive fines (*e.g.* Verified Complaint, Dkt. 1, ¶¶ 134-144); the existence, size, and scope of the other exemptions already permitted by the government (*e.g.,* ¶¶ 65-66, 68-70); and the very limited nature of plaintiffs' religious objection only to abortion-inducing drugs and devices and not to the vast majority of other contraceptives described in the federal birth control guide (*e.g.* ¶¶53-57, 90).[2]

The government has had ample opportunity to contest this evidence and argue about its import both in its opposition (Defendants' Memorandum in Opposition to Plaintiffs'

---

[2] In his concurrence, Judge Bacharach stated that the "record does not contain any evidence." This statement overlooked the existence of a verified complaint. That verified complaint, moreover, relied on and cited to government websites which contained admissions about the size and scope of the existing exemptions. *See, e.g.,* ¶¶ 66, 70, 90. Such statements on government websites are admissions under Federal Rule of Evidence 801(d)(2)(A) and are self-authenticating under Federal Rule of Evidence 902(5). In any case, a preliminary injunction "is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.").

Motion for Preliminary Injunction at 39-40) and during a lengthy oral argument (*see, e.g.* Tr. at 100-102).  Both parties have expressly disclaimed the need for additional evidence at the preliminary injunction stage.  *See* Tr. at 5:9-14 (Court: "Do you anticipate offering evidence on disputed fact questions or not?" . . . Government:  "We don't either, Your Honor.  Just argument.").[3]

In light of the fact that all parties have already briefed and submitted these issues to the Court, and in light of the fact that Plaintiffs' exposure to massive fines beginning in less than 72 hours, Plaintiffs respectfully request that the Court simply analyze and rule on the remaining two factors based on the papers and arguments already submitted.  In light of the Tenth Circuit's conclusion that Plaintiffs are likely to succeed on the merits and will face irreparable harm if denied a preliminary injunction, that analysis should be quite easy:  both the equities and the public interest favor temporarily sparing Plaintiffs from crushing fines where they are likely to succeed on the merits of the case.  This is particularly true where, as here, the government has exempted plans covering millions of people from the Mandate, and has voluntarily stipulated to injunctions in other cases (as discussed infra at Section II(C)).

## II. The Court should issue a temporary restraining order preventing enforcement of the Mandate against Plaintiffs.

Alternatively, Plaintiffs urgently requests this court to immediately grant a temporary restraining order to avoid crushing fines, which the government will start imposing just

---

[3] *See also* Tr. 103:11-17 ("THE COURT: . . . . [I]s there some other aspect to this that either counsel wants to add that I brushed past?  Mr. DUNCAN:  No, your Honor.  I think we've covered it.  MS BENNETT:  Same here, Your Honor.").

days from now on July 1, 2013. Especially given the court of appeal's finding that those fines unconstitutionally pressure Plaintiffs to violate their religious beliefs, this court should easily find that protecting Plaintiffs from that pressure is equitable and in the public interest.

## A. The legal standard for granting a temporary restraining order.

The standard for granting a temporary restraining order is largely the same as the preliminary injunction standard. *See Thomas v. Carson*, 30 F. App'x 770, 772 (10th Cir. 2002). When seeking a temporary restraining order or preliminary injunction, the plaintiff must demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the [plaintiff's] favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Where the requested injunctive relief is disfavored—such as when it would alter the status quo—the plaintiff must make a "heightened" showing. *Roda Drilling Co.*, 552 F.3d at 1209. But as this court and the Tenth Circuit have already held in this case, that heightened standard does not apply here. *Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278, 1286 (W.D. Okla. 2012) ("Here, plaintiffs are not seeking a disfavored injunction, but rather ask the court to preserve the status quo"); *accord Hobby Lobby Stores, Inc. v. Sebelius*, 2012 WL 6930302, at *1 (10th Cir. Dec. 20, 2012) (same).

## B. Law of the case resolves the likelihood of success and irreparable harm factors.

The Mandate's threat against Plaintiffs compelled the court of appeals to conclude that Plaintiffs had already shown a likelihood of success on the merits and that they would suffer irreparable harm. Thus, this court need only consider the final two elements. *U.S. v. West*, 646 F.3d 745, 747-48 (10th Cir. 2011) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case," which "govern[s] the same issues in subsequent stages of the same case").

### C. The temporary restraining order would serve the public interest.

The public interest would be served by issuing a temporary restraining order for the same reasons it would be served by granting the preliminary injunction. Enjoining the Mandate will not harm the public interest. The government has admitted as much by voluntarily dismissing its appeal and leaving the district court's preliminary injunction intact in *Tyndale House v. Sebelius*, and by either failing to oppose or failing to appeal preliminary injunctions in six other HHS mandate cases.[4] More dramatically, the government has indefinitely exempted plans covering tens of millions of individuals from having to cover *any* of the mandated preventive services—and not merely the handful of contraceptives to which Plaintiffs object. For example, plans may avoid the Mandate by

---

[4] Order, *Tyndale House Publishers v. Sebelius*, No. 13-5018 (D.C. Cir. May 3, 2013) (granting the government's voluntary dismissal motion); *see also* Order, *Johnson Welded Products Inc. v. Sebelius*, No. 1:13-cv-00609 (D.D.C. May 24, 2013) (granting unopposed motion for preliminary injunction); Order, *Hart Electric LLC v. Sebelius*, No. 1:13-cv-02253 (N.D. Ill. April 18, 2013) (same); Order, *Tonn and Blank Construction, Inc. v. Sebelius*, No. 1:12-cv-325 (N.D. Ind. April 1, 2013) (same); Order, *Bick Holdings Inc. v. Sebelius*, No. 4:13-cv-00462 (E.D. Mo. April 1, 2013) (same); Order, *Sioux Chief Manufacturing Co. Inc. v. Sebelius*, No. 13-cv-0036 (W.D. Mo. Feb. 28, 2013) (same); Order, *Lindsay Rapaport and Postel LLC v. Sebelius*, No. 13-cv-1210 (N.D. Ill. Mar. 20, 2013) (granting preliminary injunction by agreement of the parties).

not making certain changes after the ACA's effective date. 42 U.S.C. § 18011(a)(2). Although these "grandfathered" plans must comply with other ACA requirements, they need not cover any women's preventive services. Plans may stay grandfathered indefinitely, and the government expects plans covering over 87 million people to do so through 2013. *See* HealthCare.gov, Keeping the Health Plan You Have (June 14, 2010), http://www.healthcare.gov/news/factsheets/2010/06/keeping-the-health-plan-you-have-grandfathered.html (last visited June 27, 2013) ("Grandfathering Factsheet"). In addition, "Small employers," employing over 34 million people, need not offer health insurance at all and can therefore avoid the Mandate as well.[5]

Finally, and most fundamentally, it is always in the public interest to protect First Amendment freedoms. *Newland v. Sebelius*, 881 F. Supp. 2d 1287, 1295 (D. Colo. 2012) (finding "'there is a strong public interest in the free exercise of religion even where that interest may conflict with [another statutory scheme]'") (quoting *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004)); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest."). Although RFRA violations are not constitutional violations, "Congress has given RFRA similar importance by subjecting all subsequent congressional enactments to a strict scrutiny standard of review unless those enactments explicitly exclude themselves from RFRA." *Hobby Lobby*

---

[5] WhiteHouse.Gov, *The Affordable Care Act Increases Choice and Saving Money for Small Business* at 2, http://www.whitehouse.gov/files/documents/health_reform_for_small_businesses.pdf (last visited June 27, 2013) ("White House Paper").

*Stores, Inc. et al. v. Sebelius*, slip op. at 66-67 (10th Cir. July 27, 2013) (citing 42 U.S.C. § 2000bb-3(b)). In this matter, there are two schemes in conflict—the ACA compels the Greens to act; RFRA says they need not. Congress structured RFRA to override other legal mandates, including its own statutes, if and when they encroach on religious liberty. "In this way, RFRA is indeed something of a 'super-statute.'" *Id.* at 12 (Gorsuch, J. concurring) (citation omitted). "[B]ecause the government identifies no explicit exclusion in the ACA to its dictates, it is RFRA's legislative direction that must prevail in the end. Indeed, though our opinions today may be many and the routes we follow various, no fewer than six of us agree that the district court's holding failed to give sufficient attention to RFRA's powerful voice." *Id.* The public interest in enforcing a fundamental right must outweigh the interest in immediate enforcement of a new law that creates a "substantial expansion of employer obligations" and raises "concerns and issues not previously confronted." *Hobby Lobby Stores, Inc. et al. v. Sebelius*, 850 F. Supp.2d 1278, 1296 (W.D. Okla. Nov. 19, 2012); *see also Newland*, 881 F. Supp.2d at 1295 (finding "'there is a strong public interest in the free exercise of religion even where that interest may conflict with [another statutory scheme]'") (quoting *O Centro*, 389 F.3d at 1010).

**D.  The balance of harms tips strongly in Plaintiffs' favor.**

The balance of harms tips strongly in Plaintiffs' favor for the same reasons it tips in their favor with respect to the preliminary injunction. Given the Tenth Circuit's ruling and earlier statements by this Court, there can be no doubt that the balance of the equities favors Hobby Lobby and necessitates emergency relief. As this Court acknowledged in its opinion, granting a preliminary injunction in this case would merely "preserve the

status quo." *Hobby Lobby Stores, Inc.*, 870 F. Supp. 2d at 1286. Preserving the status quo

in such circumstances is "the primary goal of a preliminary injunction." *RoDa Drilling*,

552 F.3d at 1208. The same standard applies to a temporary restraining order. *See supra*

Section II(A).

As the Tenth Circuit acknowledged, the harms to Hobby Lobby are severe, and the

harms to the Government are minimal and temporary.[6] A plurality of the court balanced

the equities, and concluded they favored Hobby Lobby:

> ***Nor is there any question about the balance of equities.*** A preliminary injunction
> would forestall the government's ability to extend all twenty approved
> contraceptive methods to Hobby Lobby and Mardel's 13,000 employees. But
> Hobby Lobby and Mardel will continue to provide sixteen of the twenty
> contraceptive methods, so the government's interest is largely realized while
> coexisting with Hobby Lobby and Mardel's religious objections. And in any
> event, the government has already exempted health plans covering millions of
> others. These plans need not provide *any* of the twenty contraceptive methods. By
> contrast, Hobby Lobby and Mardel remain subject to the Hobson's choice between
> catastrophic fines or violating its religious beliefs. Accordingly, the balance of
> equities tips in Hobby Lobby and Mardel's favor.

Op. 66 (emphasis added).[7]

The majority opinion confirms this balance. It held that the Government's interests

here are non-compelling "because the contraceptive coverage requirement presently does

---

[6] As the court said, "[T]he district court record leaves only one possible scenario: Hobby
Lobby and Mardel incurred a substantial burden on their ability to exercise their religion
because the law requires Hobby Lobby and Mardel to: [1] compromise their religious
beliefs, [2] pay close to $475 million more in taxes every year, or [3] pay roughly $26
million more in annual taxes and drop health insurance benefits for all employees. This is
precisely the sort of Hobson's choice described in *Abdulhaseeb*, and Hobby Lobby and
Mardel have established a substantial burden as a matter of law." Op. 53-54.

[7] One additional judge concurred, stating that "the equitable balancing should be
performed by the district court" in the first instance. Opinion of Bacharach, J.,
concurring, at 2.

not apply to tens of millions of people. . . .[T]his exempted population includes those working for private employers with grandfathered plans, for employers with fewer than fifty employees, and, under a proposed rule, for colleges and universities run by religious institutions."   Op. 59.[8]   It also held that Hobby Lobby's request is far more limited: "Hobby Lobby and Mardel ask only to be excused from covering four contraceptive methods out of twenty, not to be excused from covering contraception altogether. The government does not articulate why accommodating such a limited request fundamentally frustrates its goals." Op. 61.

Given these holdings, it is clear that the harms to Hobby Lobby are severe, while the harms to the government are *de minimis* and unsupported in the record. Where the Government exempts "tens of millions" from its rule, a temporary, limited exemption for Hobby Lobby imposes no further harm. The balance of the equities strongly favors Hobby Lobby, and the temporary restraining order should be granted.

## CONCLUSION

Plaintiffs respectfully request that the Court enter a preliminary injunction against Defendants in accordance with the accompanying proposed order. In the alternative, Plaintiffs respectfully request that the Court issue a temporary restraining order.

---

[8] Moreover, the Government has acceded to preliminary injunctions for other for-profit employers by failing to oppose the motions, or by dismissing its appeal of the preliminary injunction. *See supra* at 7 n.4.

Respectfully submitted,

Dated:  June 27, 2013

/s/ Kyle Duncan
S. Kyle Duncan
   LA Bar No. 25038
   (admitted *pro hac vice*)
Eric S. Baxter
   DC Bar No. 479221
   (admitted *pro hac vice*)
Lori Halstead Windham
   DC Bar No. 501838
   (admitted *pro hac vice*)
Adèle Auxier Keim
   DC Bar No. 989528
   (admitted *pro hac vice*)
THE BECKET FUND FOR RELIGIOUS
LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 955-0095
(202) 955-0090 (fax)
kduncan@becketfund.org

Charles E. Geister III
   OBA No. 3311
Derek B. Ensminger
   OBA No. 22559
HARTZOG, CONGER, CASON & NEVILLE
1600 Bank of Oklahoma Plaza
201 Robert S. Kerr Avenue
Oklahoma City, OK  73102
(405) 235-7000
(405) 996-3403 (fax)
cgeister@hartzoglaw.com
densminger@hartzoglaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed through the Court's ECF filing system on June 27, 2013, and served on all counsel of record by the same means.

s/ S. Kyle Duncan
S. Kyle Duncan
*Attorney for Plaintiffs*

13